UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

OLIVIA MOLINA and
PABLO REGALADO,

      Plaintiffs,

vs.                                                         Civ. No. 08-00153 MV/LAM

ALBUQUERQUE POLICE DEPARTMENT,
a local public body of the State of New Mexico,
CITY OF ALBUQUERQUE, a local public body
of the State of New Mexico, and OFFICER
MICHAEL WERNER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed January 22, 2009 **[Doc. Nos. 32-33]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Defendants' motion is in part well-taken and in part not well-taken and accordingly will be **GRANTED in part** and **DENIED in part**.[1]

## FACTUAL BACKGROUND

This case arises out of the allegedly unlawful seizure of Plaintiffs by Officer Michael Werner. While the affidavits submitted by Plaintiffs and Defendants paint very different pictures of the encounter between Plaintiffs and Officer Werner, the following facts are stated in the light

---

[1] The term "Defendants" is used to refer to the City of Albuquerque and Officer Michael Werner. The claims brought against the Albuquerque Police Department were previously dismissed **[Doc. No. 10]**.

most favorable to Plaintiffs, as it is Defendants who are seeking summary judgment.

At just before 9:00 p.m. on September 24, 2005, and after dark, Plaintiffs Pablo Regalado and Olivia Molina were traveling slowly in their vehicle with their eight-year-old grandson, when they came to an unmarked vehicle that was blocking the alley in a high-crime area of Albuquerque. Mr. Regalado, who was driving, waited for the vehicle to move and when it did not, he flashed his headlights and honked his horn. As the vehicle still did not move, Mr. Regalado exited his car, walked to the stopped vehicle, and tapped on the driver's-side window. Officer Michael Werner, who was employed by the City of Albuquerque Police Department and on patrol at the time, was alone in the vehicle. He was dressed in street clothes with his badge on his belt. Officer Werner opened the window of the vehicle, but did not identify himself as a police officer. Mr. Regalado asked Officer Werner, in Spanish, to move the vehicle so that he could pass. Officer Werner responded that he did not speak Spanish and he lifted his gun and pointed it directly at Mr. Regalado. Upon seeing the gun, Mr. Regalado retreated to his vehicle. As Mr. Regalado was attempting to enter the driver's side of his vehicle, Officer Werner, with gun drawn and pointed at Plaintiffs, caught up to Mr. Regalado, pulled Mr. Regalado by his shirt, forced Mr. Regalado against the back door of his car, kicked Mr. Regalado in the legs, and then threw Mr. Regalado to the ground head first and shoved his knee into Mr. Regalado's back.

Witnessing the assault, Ms. Molina got out of the vehicle and went around the back of the car towards where Officer Werner had Mr. Regalado. She yelled at Officer Werner asking what he was doing and asking him to stop. Officer Werner then turned towards Ms. Molina and hit her on the nose with his handcuffs. In her affidavit, Ms. Molina states that as she fell backwards,

2

she reached out to break her fall and grabbed Officer Werner from the neck. However, when interviewed after the encounter by another police officer, Ms. Molina stated that after Officer Werner hit her, she jumped on him. At this point, Officer Werner finally identified himself as a police officer and Ms. Molina retreated to the passenger side of Plaintiffs' vehicle as Officer Werner handcuffed Mr. Regalado.

After Officer Werner finished handcuffing Mr. Regalado, he placed a call for assistance. Thereafter, Officer Tank D. Guenther arrived on the scene. Medical personnel checked and cleared Mr. Regalado at the scene and he declined transport for medical attention. Plaintiffs were then transported to the Southeast Substation where they were interviewed by Officer Elder Guevara.[2]

Plaintiffs acknowledge that earlier in the evening Mr. Regalado had consumed alcohol and that there was one empty container of beer in their car from the day before, as well as an unopened eighteen pack of beer that Plaintiffs had just purchased. The affidavit of Officer Guenther, submitted by Defendants in support of their motion, states that when Officer Guenther arrived on the scene, he noticed that Mr. Regalado had a strong odor of alcohol on his breath and

---

[2] While there are certain inconsistencies between the affidavits submitted by Plaintiffs in opposition to Defendants' motion and the transcripts of these interviews, this Court does not find that the affidavits were submitted in bad faith pursuant to Federal Rule of Civil Procedure 56(g) and declines to impose sanctions. Though this Court acknowledges that, particularly as to Ms. Molina, there are discrepancies as to when she first became aware that Officer Werner was a law enforcement officer and the precise nature of the physical contact between her and Officer Werner, it also finds that as to other issues, the interviews clearly support Plaintiffs' version of the events, despite the interviewer's apparent attempts to get Plaintiffs to adopt a different version of the events. Given the leading nature of the questions asked during the interviews, the circumstance under which the interviews were conducted, and the ambiguities in many of the answers provided, this Court declines to strike Plaintiffs' affidavits based on the alleged inconsistencies. Instead, this Court finds that the purported inconsistencies and the accompanying credibility issues are properly left for trial.

his eyes were bloodshot and watery. Further, the results of a breathalyzer test administered on Mr. Regalado at the police station were 0.14g/210L, well-above the legal limit. While these facts are not directly disputed by Plaintiffs, Plaintiffs have submitted evidence that it was dark during the encounter and that things happened quickly, as well as an affidavit contradicting Officer Werner's statement that there were two open containers of beer in the car.[3] Taken in the light most favorable to Plaintiffs, one can infer from this evidence that contrary to the affidavit of Officer Werner, Officer Werner did not have reason to believe Mr. Regalado had been drinking, nor was he aware that there was an empty open container of beer in Mr. Regalado's car, at the time he used force against and arrested Mr. Regalado.

On February 9, 2008, Plaintiffs filed a complaint alleging that Officer Werner deprived Plaintiffs of their right to be secure in their person against unreasonable seizure of their persons, in violation of the Fourth and Fourteenth Amendments and subjected them to cruel and unusual punishment in contravention of the Eighth Amendment (First Cause of Action); that the City of Albuquerque (the "City") is liable for Officer Werner's violation of Plaintiffs' constitutional rights due to its failure to provide adequate training and supervision (Second Cause of Action); that Officer Werner and the City violated Plaintiffs' due process rights under the Fourteenth Amendment (Third Cause of Action); that Defendants violated the New Mexico Tort Claims Act

---

[3] In their reply brief, Defendants argue that portions of Plaintiffs' affidavits regarding what Officer Werner could or could not have seen should be struck because they are not based on personal knowledge. While Defendants are correct that Plaintiffs do not have personal knowledge as to precisely what Officer Werner observed and this Court therefore does not give weight to their conclusions, Plaintiffs do have sufficient personal knowledge to testify as to factual circumstances that would support an inference that Officer Werner's testimony as to what he allegedly saw was not credible, including that it was dark during the encounter and that the incident happened very quickly.

(Fourth Cause of Action); and that Defendants are liable for punitive damages (Fifth Cause of Action).  On January 22, 2009, Defendants moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## DISCUSSION

I.   **Defendants' Alleged Violation Of Plaintiffs' Eighth Amendment Rights**

As a preliminary matter, this Court briefly addresses Plaintiffs' claim that Officer Werner's conduct constituted cruel and unusual punishment in violation of the Eighth Amendment.  In moving for summary judgment, Defendants argue that the Eighth Amendment of the United States Constitution is inapplicable because the alleged wrongdoing took place pursuant to an investigation and arrest, not following an adjudication of guilt.  *See Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (rights of pretrial detainees are not controlled by the Eighth Amendment because punishment constrained by the Eighth Amendment can be imposed only when it follows a determination of guilt after trial or plea).  Plaintiffs appear to concede that the Eighth Amendment is inapplicable as they failed to respond to this portion of Defendants' motion.  Accordingly, this Court grants summary judgment in favor of Defendants as to Plaintiffs' claims that they were subject to cruel and unusual punishment in contravention to the

Eighth Amendment.

## II.    Officer Werner's Alleged Violation Of Plaintiffs' Fourth Amendment Rights

The crux of Plaintiffs' complaint is that Officer Werner violated Plaintiffs' Fourth Amendment rights by using excessive force against Plaintiffs and by stopping Plaintiffs without reasonable suspicion and arresting Plaintiffs without probable cause.  In moving for summary judgment, Defendants argue that Officer Werner is entitled to qualified immunity.  The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) "the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" and (2) "the right violated was clearly established."  *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).[4]  If a plaintiff meets his or her burden of demonstrating both that the defendant's actions violated a constitutional right and the right was clearly established at the time of the alleged conduct, then the defendant, as the moving party, must satisfy the usual summary judgment standard by showing that there are no genuine issues of material facts and that he or she is entitled to judgment as a matter of law.

---

[4] In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the United States Supreme Court held that lower courts must move sequentially through these two prongs in assessing whether qualified immunity applies—thus addressing the "clearly established" prong only if first finding the violation of a constitutional right.  In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), however, the Supreme Court held that lower courts have the discretion to decide which of the two prongs to consider first.

*Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).  Where the record shows unresolved factual disputes relevant to the qualified immunity analysis, a motion for summary judgment based on qualified immunity should be denied.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

      **A.**     **Have Plaintiffs Established A Constitutional Violation?**

The Fourth Amendment of the United States Constitution, which applies to state action through the Fourteenth Amendment, guarantees citizens the right "to be secure in their persons . . . against unreasonable searches and seizures."  The United States Supreme Court has recognized that the Fourth Amendment right to be secure from unreasonable seizures is violated not only where a citizen is subject to an investigatory stop without reasonable suspicion or an arrest without probable cause, but also where excessive force is used in connection with an investigatory stop or arrest.  *Graham v. Conner*, 490 U.S. 386, 394-95 (1989) (Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.").  Here the evidence, taken in the light most favorable to Plaintiffs, is sufficient to establish a violation of Plaintiffs' Fourth Amendment rights.

According to Plaintiffs' affidavits, when Mr. Regalado walked up to Officer Werner's car, tapped on the window, and asked Officer Werner to move the car so that he could pass, Officer Werner—without identifying himself as a police officer—drew his gun and pointed it directly at Mr. Regalado.  Mr. Regalado then tried to retreat to his vehicle and Officer Werner, with gun drawn, pursued him, threw him against a car, kicked him, threw him to the ground head first, and then shoved a knee into Mr. Regalado's back.  When Ms. Molina approached, concerned about

her husband and yelling at Officer Werner to stop, he hit her on the nose.  Only after hitting Ms. Molina, did Officer Werner finally identifying himself as a police officer.

These allegations are sufficient to establish a violation of Plaintiffs' Fourth Amendment rights.  When Officer Werner pointed his gun at Plaintiffs, it was clear that they were no longer free to walk away and were "seized" for Fourth Amendment purposes.  *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").  Based on Plaintiffs' affidavits, when Officer Werner first seized Plaintiffs, the only information he had, apart from general information that the geographic area was known for criminal activity, was that Mr. Regalado had been driving slowly, had honked his horn and flashed his headlights, and had eventually exited his vehicle, walked to Officer Werner's car, tapped on the window of the car, and made a request in Spanish that Officer Werner move the car so that Plaintiffs could pass.[5]  As this evidence does not support a finding that Officer Werner had reasonable suspicion supported by "specific and articulable facts" that "criminal activity may be afoot," even assuming that Officer Werner was only intending to conduct an investigatory stop, his seizure of Plaintiffs violated their constitutional rights.  *Id.* at 21-22, 30; *accord United States v. Sokolow*, 490 U.S. 1, 7 (1989) (the Fourth Amendment requires some minimal level of objective justification, not a mere

---

[5] That Mr. Regalado decided to retreat to his car *after* Officer Werner pointed his gun at Mr. Regalado does not aid Defendants in establishing reasonable suspicion.  While an attempt to flee upon seeing a uniformed officer may be a factor supporting reasonable suspicion, here Mr. Regalado avers that Officer Werner did not identify himself as a police officer, but instead simply pointed a gun directly at Mr. Regalado.  Accordingly, when viewed in the light most favorable to Plaintiffs, Mr. Regalado's attempt to return to his car in response to an unidentified person pointing a gun at him cannot be viewed as evasive behavior that would create reasonable suspicion.

8

unparticularized suspicion or hunch, for making an investigatory stop).  Moreover, when viewed in the light most favorable to Plaintiffs, the evidence submitted supports an inference that Officer Werner proceeded to arrest Mr. Regalado without first gathering any additional information that would support the much more stringent finding of probable cause necessary to support an arrest, thus further violating Mr. Regalado's Fourth Amendment rights.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (a warrantless arrest violates the Fourth Amendment unless the arrest is supported by probable cause).  Finally, Plaintiffs' evidence is sufficient to support a finding that Officer Werner's use of force violated Plaintiffs' constitutional rights as it was not objectively reasonable in light of the circumstances.  *See Graham*, 490 U.S. at 395-99 (recognizing that the "reasonableness" of a particular seizure under the Fourth Amendment "depends not only on *when* it is made, but also on *how* it is carried out" and holding that the use of force must be "objectively reasonable" in light of the facts and circumstances).  Accordingly, as the evidence taken in the light most favorable to Plaintiffs is sufficient to support a finding that Officer Werner used excessive force and seized Plaintiffs without even reasonable articulable suspicion, this Court finds that Plaintiffs have met their burden of establishing a constitutional violation.

      **B.**    **Were The Rights Clearly Established?**

Having decided that the facts, taken in the light most favorable to Plaintiffs, are sufficient to establish a violation of Plaintiffs' constitutional rights, this Court must now determine whether these rights were clearly established at the time of the incident.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  *Saucier*, 533 U.S. at 201.  "The relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  "Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful."  *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (*en banc*).  The Tenth Circuit has held that "for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains."  *Id.* at 1114-15 (internal quotations omitted).

    It is well-established that the Fourth Amendment requires an officer making an investigatory stop to have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'"  *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30).  "For an officer to have reasonable suspicion to seize an individual, the officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *Cortez*, 478 F.3d at 1115 (internal quotations omitted).  Likewise, in order for an arrest to be constitutionally permissible, "[t]he law was and is unambiguous:  a government official must have probable cause to arrest an individual."  *Cortez*, 478 F.3d at 1117; *accord Fogarty*, 523 F.3d at 1158-59.  "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Cortez*, 478 F.3d at 1116 (internal quotations omitted); *accord Fogarty*, 523 F.3d at 1156; *Olsen*, 312 F.3d at 1312.

    As discussed above, viewing the facts in the light most favorable to Plaintiffs, in response

10

to Mr. Regalado honking his horn, flashing his car lights, and then tapping on Officer Werner's window and asking Officer Werner to move his car, Officer Werner—without identifying himself as a law enforcement officer—pointed his gun at Plaintiffs, detained Plaintiffs, and proceeded, without gathering additional evidence, to violently arrest Mr. Regalado. Officer Werner could not have reasonably but mistakenly concluded that these limited facts provided reasonable suspicion to stop Plaintiffs, much less probable cause for their arrest, nor do Defendants attempt to argue otherwise. Rather, in moving for summary judgment, Defendants argue (1) that Officer Werner had reasonable suspicion to conduct an investigatory stop based on Mr. Regalado's erractic and aggressive behavior; (2) that, alternatively, when Officer Werner initially approached Plaintiffs' car, there was no seizure, as Officer Werner was merely approaching an individual in a public place and thus reasonable suspicion was not necessary; (3) that Officer Werner had probable cause to arrest of Mr. Regalado based on his observation of open beer cans in Plaintiffs' car and his belief that Mr. Regalado had been driving while intoxicated; and (4) that Officer Werner had probable cause to arrest Ms. Molina as she had physically attacked him while he was arresting Mr. Regalado. The problem with each of these arguments is that each is based on disputed issues of fact. As discussed in above, when the facts are viewed in the light most favorable to Plaintiffs, there is evidence sufficient to support a finding (1) that Mr. Regalado was not behaving in an erratic or aggressive manner; (2) that when Officer Werner exited his vehicle and approached Plaintiffs' car, he did so with his gun drawn and pointed at Plaintiffs, thus negating Defendants' argument that there was no Fourth Amendment seizure at the time, *see Terry*, 392 U.S. at 16; (3) that Officer Werner did not have reason to believe Mr. Regalado had been drinking, nor was he aware that there was an empty

11

open container of beer in Mr. Regalado's car, at the time he used force against and arrested Mr. Regalado; and (4) that the incident between Ms. Molina and Officer Werner occurred prior to the time Officer Werner identified himself as a law enforcement officer.

Where, as here, the very facts and circumstances that are alleged to have provided the officer with reasonable suspicion or probable cause are in dispute, summary judgment cannot be granted.  In *Olsen v. Layton Hills Mall*, the Tenth Circuit explicitly recognized that "[w]hen there are unresolved disputes of historical fact relevant to whether the officer had probable cause and to what information he possessed—and thus to whether he may properly claim qualified immunity, a court may not grant summary judgment based on qualified immunity because the officer would not have shown that no genuine dispute exists as to material fact."  312 F.3d at 1312-13 (holding that factual disputes regarding the sequence of events and the information known to the officer before the arrest precluded the court from granting the officer summary judgment on the basis of qualified immunity).  This is not a case where there is a legal dispute as to whether the law was clearly established.  Rather, whether Officer Werner will be entitled to qualified immunity for the detention and arrest of Plaintiffs will ultimately rest on the relative credibility of the parties—a determination that is properly reserved for trial.

As to Plaintiffs' claims that Officer Werner used excessive force, it is well-established that these claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 395-99; *Fogarty*, 523 F.3d at 1159-60.  "The reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions."  *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001) (quoting *Graham*,

490 U.S. at 396-97); *see also Graham*, 490 U.S. at 396 (recognizing that not every push or shove, even if it seems unnecessary in retrospect, violates the Fourth Amendment). Proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal quotations omitted). While the objective reasonableness standard of the Fourth Amendment is "clearly established," the "clearly established" prong of the qualified immunity analysis requires a "more particularized" finding. *Saucier*, 533 U.S. at 201-02 (internal quotations omitted). Plaintiffs must show that the contours of their right were "'sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

      Plaintiffs argue that a reasonable officer in Officer Werner's situation would understand that it was not objectively reasonable to point a gun at Plaintiffs, pursue Mr. Regalado, throw Mr. Regalado against the car, kick Mr. Regalado, throw Mr. Regalado face first to the ground, shove a knee in Mr. Regalado's back, and hit Ms. Molina when she approached—all without even identifying him or herself as a law enforcement officer—where, as here, such conduct could not be justified by the severity of the crime at issue, the Plaintiffs did not pose an immediate threat to the safety of the officers or others, and any attempt by Mr. Regalado to flee or Ms. Molina to protect her husband were not due to their efforts to resist arrest, but rather resulted from Officer Werner's failure to identify himself as a law enforcement officer. Defendants, on the other hand, argue that Officer Werner's use of force was appropriate to

effectuate the arrest of Mr. Regalado, as Mr. Regalado had previously demonstrated aggression, had refused to exit his vehicle after Officer Werner had repeatedly identified himself as a law enforcement officer and ordered Mr. Regalado to get out of the car, had dropped his hand down so that Officer Werner could no longer see it thus necessitating his removal from the vehicle, and had (after being physically removed from his vehicle) attempted to strike Officer Werner with his hands and to kick Officer Werner with his feet.  Defendants likewise contend that Officer Werner was justified in pushing Ms. Molina away as she "jumped" on him, struck him in the ear, and struck him on the back of the neck while he was attempting to handcuff Mr. Regalado.

As the above aptly demonstrate, there is a genuine dispute as to what actually happened on the evening of September 24, 2005.  The parties' arguments are not primarily legal, but rather factual.  How these factual issues are ultimately resolved, in turn, will dictate whether Officer Werner's conduct was objectively reasonable in light of the particular facts and circumstances he faced and, if not, whether it would have been sufficiently clear to a reasonable official that the conduct in which Officer Werner engaged violated Plaintiffs' rights.   Where, as here, "neither party's asserted material facts jibe with those of the other," it is improper to grant summary judgment on an excessive force claim.  *Olsen*, 312 F.3d at 1314-15 (summary judgment on the basis of qualified immunity is improper where genuine issues of material fact preclude a judicial determination of whether an officer's conduct was objectively reasonable); *see also Saucier*, 533 U.S. at 216 (Ginsburg, J., concurring in judgment) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official.  And that is as it should be.  When a plaintiff proffers evidence that the official subdued her with a chokehold even though she

14

complied at all times with his order, while the official proffers evidence that he used only stern words, a trial must be had.")

Accordingly, for the foregoing reasons, this Court denies Officer Werner summary judgment as to Plaintiffs' Fourth Amendment Claims.

## III. Municipal Liability For Officer Werner's Alleged Violation Of Plaintiffs' Constitutional Rights

Plaintiffs assert that the City is liable for the actions of Officer Werner because the City failed to properly train and supervise Officer Werner. Defendants have moved for summary judgment on the basis that Plaintiffs have not come forward with any evidence to support a claim for municipal liability.

A municipality may not be held liable under 42 U.S.C. section 1983 simply because it employs a person who violated a plaintiff's federally protected rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 694 (1978). Instead "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998). A plaintiff "can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the 'moving force' behind an already established constitutional deprivation." *Id*. at 1317. However, "the failure to train must amount to 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Id*. at 1318 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Ordinarily, proof of a single incident of unconstitutional activity is not sufficient to impose

municipal liability. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with final authority to establish municipal policy with respect to the action ordered. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986); *see also Butler*, 992 F.2d at 1055 (the plaintiff must prove the single incident "was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"). The fact that a specific harm could have been avoided if additional training had been provided is not sufficient to support a failure to train claim under section 1983. *Harris*, 489 U.S. at 391.

Plaintiffs have failed to come forward with sufficient evidence to withstand summary judgment as to their claim that the City is liable for the alleged violation of their constitutional rights by Officer Werner. Although Plaintiffs have provided evidence demonstrating that Officer Werner may have committed constitutional violations, Plaintiffs have not taken the subsequent step of linking these alleged constitutional violations to a municipal custom or policy. Plaintiffs have not provided any evidence of the City's customs or policies; have not alleged facts linking the alleged violations by Officer Werner to broader municipal policies; have not come forward with evidence regarding the training, or lack of training, received by Officer Werner; have made no effort to link the actual training provided to Officer Werner to the events at issue in this case; have not provided evidence of any other incidents similar to this incident; and have not provided any evidence that the illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the City. Further, Plaintiffs have made no showing of any deliberate indifference on the part of the City with respect to training on the

handling of investigatory stops and arrests. Instead, Plaintiffs simply assert that the City's failure to train and supervise is obvious in light of Officer Werner's conduct, as "What reasonable officer in [his] right mind draws his weapon first, fails to identify himself and assaults civilians before asking any questions?" **[Doc. No. 38 at 22]**. This bare assertion is not sufficient to impose municipal liability under section 1983 based on the alleged failure to train and supervise and employee.

As Plaintiffs have failed to come forward with any evidence from which a reasonable trier of fact could determine that the execution of any City policy or custom inflicted Plaintiffs' injury such that the City could be held liable under section 1983, summary judgment will be granted in favor of the City.

## IV.   Defendants' Alleged Violation Of Plaintiffs' Due Process Rights

In their Third Cause of Action, Plaintiffs allege that they were deprived of their liberty without due process of law under the Fourteenth Amendment. Defendants move for summary judgment on the basis that Plaintiffs' due process claim is subsumed within their Fourth Amendment claims. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395). Plaintiffs appear to concede that their claims should be analyzed under the Fourth Amendment, as they do not respond to this portion of Defendants' motion, nor do they otherwise press a separate due process claim. Accordingly, this Court grants summary judgment in favor of Defendants to the extent that Plaintiffs' complaint asserts a due process claim that is independent

from their Fourth Amendment claims.

## V.     Defendants' Alleged Violation Of The New Mexico Tort Claims Act

Pursuant to a stipulation of the parties, on March 3, 2009, this Court dismissed Plaintiffs' claims under the New Mexico Tort Claims Act with prejudice **[Doc. No. 44]**.  Accordingly, the portion of Defendants' motion addressing Plaintiffs' claim under the New Mexico Tort Claims Act is denied as moot.

## VI.    Punitive Damages

This Court need not address Defendants' argument that a municipality cannot be held liable for punitive damages, as there are no remaining claims against the City.

As to Officer Werner, Defendants do not argue that he cannot be held liable for punitive damages.  Instead, Defendants argue that because all of the other claims against Officer Werner should be dismissed, so to should the claim for punitive damages.  As this Court is denying Defendants' motion for summary judgment as to Plaintiffs' Fourth Amendment claims against Officer Werner, it will also deny Defendants' request that the punitive damage claim against Officer Werner be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, filed January 22, 2009 **[Doc. No. 32-33]**, is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' Motion for Summary Judgment as to the Fourth Cause of Action (the New Mexico Tort Claims Act) is denied as moot.

2. Summary judgment is granted in favor of the City of Albuquerque on Plaintiffs' First, Second, Third and Fifth Causes of Action.

3. Officer Werner is denied summary judgment as to Plaintiffs' 42 U.S.C. section 1983 claims that Officer Werner violated Plaintiffs' rights guaranteed by the Fourth Amendment of the United States Constitution, as made applicable to States pursuant to the Fourteenth Amendment.

4. Officer Werner is denied summary judgment as to Plaintiffs' claim for punitive damages.

5. Summary judgment is granted in favor of Officer Werner as to the claim that Officer Werner violated Plaintiffs' rights under the Eighth Amendment of the United States Constitution and as to any claim that Officer Werner violated Plaintiffs' due process rights under the Fourteenth Amendment independent of Plaintiffs' Fourth Amendment claims.

DATED this 30th day of September, 2009.

_____
**MARTHA VAZQUEZ**
**Chief United States District Judge**

Attorney for Plaintiffs:
    Augustine M. Rodriguez, Jr., Esq.

Attorneys for Defendants:
    Gregory S. Wheeler, Esq.
    Richard H. Cravens, IV, Esq.